## BALTIMORE & O. R. CO. v. CINCINNATI GRAIN & HAY CO.

(District Court, S. D. Ohio, W. D. July 18, 1924.)

No. 3273.

**1. Carriers ⚖═26—Tariff provision as to hay and straw held diversion or reconsignment charge.**

Under tariff provision applicable to diversion and reconsignment of property and to inspection of grain and seed, local charge on hay and straw, which did not require compulsory inspection, *held* a diversion or reconsignment charge, so that no further reconsignment charge could be made, and absence of inspection did not prevent such charge.

**2 Carriers ⚖═26—Tariff provisions construed as to switching, inspection, and reconsignment charges.**

Under tariff provisions relative to inspection and reconsignment charges, and note making them applicable to particular track, subject to conditions as to switching charges, *held* that, on cars of hay unloaded on such track, no inspection or reconsignment charges could be made, and on reconsigned cars only the charges specified in the note could be collected.

At Law. Action by the Baltimore & Ohio Railroad Company against the Cincinnati Grain & Hay Company. Judgment in accordance with opinion.

Harmon, Colston, Goldsmith & Hoadly, of Cincinnati, Ohio, for plaintiff.

Moulinier, Bettman & Hunt, of Cincinnati, Ohio, for defendant.

HICKENLOOPER, District Judge. This is an action for alleged undercharge upon certain shipments of hay to the defendant, such alleged undercharge arising upon the regulations governing diversion or reconsignment of property shipped over the plaintiff's line of railway. An agreed statement of facts is submitted, and certified copies of the tariff regulations on file with the Interstate Commerce Commission were duly offered in evidence. A jury was waived, and the matter, being one of interpretation of such tariffs, was submitted to the court.

[1] The contentions of the several parties as to which tariffs (effective 1921, 1922, or 1923) apply to the several cars in question is very indefinitely presented. These several tariffs differ somewhat in details, but it is probable that they are sufficiently identical to enable the court to select one such tariff provision and to then permit the application by counsel of the principles announced. The court has accordingly taken as typical Local Freight Tariff No. H–3107–C, issued July 1, 1921, effective August 4, 1921. The applicable rules are Nos. 15 to 20, inclusive, and these rules appear in the general regulations governing diversion or reconsignment of property under the specific head-

ing "Rules and Charges Governing Grain, Seed (Field), Seed (Grass), Hay or Straw, Carloads, Held in Cars on Track for Inspection and Disposition Orders Incident Thereto at Billed Destination or at Point Intermediate Thereto." The wording of the specific rules is just as unintelligible to the layman, but not more so, than the usual highly technical railroad diction.

It is conceded by counsel that all grain and seeds are subject to compulsory inspection, either under national, state, or Board of Trade requirements, before proper delivery can be made. With this in view, rule 15 (a) requires that carloads of such grain or seed will be placed on hold tracks of the carriers for the purpose of inspection, and that when disposition order is received prior to the expiration of the free time no charge will be made for such service. If disposition order is given after the expiration of the free time, a charge of $3 per car will be made. The absence of charge when the disposition order is made prior to the expiration of free time is clearly attributable to the compulsory nature of the inspection service. When disposition order is given after the expiration of free time, the situation is analogous to that under rule 10, "Diversion or Reconsignment to Points Outside Switching Limits before Placement," for which a charge of $7 per car is made, or that arising under rule 11 (b) or rule 11 (c), of a diversion or reconsignment to points within switching limits before placement, by which charges of $3 and $7 per car, respectively, are made for change of place of delivery at destination within 24 hours after arrival, and after 24 hours after arrival, respectively, or that arising under rule 12, "Diversion or Reconsignment to Points Outside Switching Limits after Placement," for which a charge of $7 per car is made, or that arising under rule 13, "Diversion or Reconsignment to Points Within Switching Limits after Placement," by which a local carload rate is charged in addition to rate from point of origin to billed destination, but without diversion or reconsignment charge. In other words, the charge made is distinctly a diversion or reconsignment charge.

Rule 15 (b) provides that, upon cars so placed and held of hay and straw, as to which no compulsory inspection is provided, a charge of $3 per car shall be made. By note 1, which we construe to be a note to all the rules, but especially applying to rules 15 to 20, inclusive, the inspection referred to is defined: "(b) On hay and straw: Such as may be necessary or desired." By note 2 it is provided, "These rules will also apply on hay placed on Cincinnati Hay Exchange 'plug track,' on the Pittsburgh, Cincinnati, Chicago & St. Louis Railroad at Cincinnati, Ohio, subject to the following conditions;" then follow certain requirements as to payment of switching charges, in addition to through rates, and the absorption of switching charges in certain instances. The plug track of the Cincinnati Hay Exchange is an industrial track within the switching limits of Cincinnati, and if this note 2 be read in conjunction with rule 18 ("Cars Billed Direct to Public Team Tracks or to Elevators, Mills or Other Industries, Within the Switching Limits of the Billed Destination, and There Inspection and Delivery Taken, will not be subject to the charge provided in rule 15") it would seem apparent that upon carload shipments placed upon the plug track

switching charges would have to be paid in accordance with **note 2,** but no charge could be made under rule 15, nor local carload rates collected under rule 13. As to such cars specific provision is made, both as to rate and switching charges, and rule 18 relieves the consignee from any diversion or reconsignment charges other than as stated in note 2. The provision of this note would seem to be comprehensive and exclusive.

By far the larger number of the cars involved, upon arrival at Cincinnati, were placed upon the tracks of the railroad yard known as "Yard No. 2," and were subsequently reconsigned by the defendant to points in the south. These cars were placed upon such yard tracks as other cars of merchandise, and the defendant was notified of their arrival. But for the specific provisions of rules 15 to 20, governing hay and straw, it would seem that the provisions of rule 10 would clearly apply. The original destination is served by a terminal yard, and after arrival at such terminal yard the car was diverted, reconsigned, and reforwarded on orders placed with the local freight agent or other designated officer. Upon ordinary merchandise such reconsignment service entails a charge of $7 per car. The provisions of rule 15 are analogous to such diversion or reconsignment charge, except that upon hay and straw the privilege of providing for inspection is allowed, and the charge is but $3 per car. Clearly, the railroad may not charge the rate for reconsignment to points beyond switching limits under rule 10, and also collect a so-called inspection charge under rule 15. But the latter rule alone would seem applicable. Likewise, because there is mention of inspection, the consignee should not be relieved from the payment of reconsignment charges simply because the car is not inspected and no inspection is necessary or desired. When placed in the railroad yard, the car was held both for inspection (if desired) and disposition orders, and the charge specified as to hay and straw is quite clearly a diversion or reconsignment charge.

[2] The evidence is not clear as to what diversion or reconsignment charge was made or collected. The court can therefore only hold that, as to cars delivered to the railroad yard and reconsigned, the plaintiff would be entitled to collect $3 per car upon such reconsignment, and no more; that as to cars delivered to the plug track, and subsequently forwarded to points within or beyond the switching limits of Cincinnati, the provisions of note 2 apply, to the exclusion of other tariffs, and that as to cars placed upon the plug track, and there inspected *and unloaded,* rule 18 applies, and no inspection or reconsignment charges can be collected. Counsel can apply this construction to the specific cars and arrive at the thus indicated result. If necessary, the court may hear further evidence upon the charges actually collected or upon any matters of peculiar situation.

It will be noted that the conclusion here announced conforms to the informal ruling of the Interstate Commerce Commission, of which the defendant, through the O. A. Smith Agency, were advised. See I. C. C. File No. "Informal Complaint" 98192; B. & O. R. R. Co., file B–5635; O. A. Smith Agency File No. 242.